## SATTERFIELD v. THE STATE.

GILBERT, J. 1. The second ground of the amended motion complains that the court refused to give in charge to the jury certain principles of law set out in the accompanying statement of facts, which were duly requested in writing. This request embodied a request for instructions on the subject of insanity, and also on the law of voluntary manslaughter. The request was en bloc. The law of voluntary manslaughter was not involved, under the facts of the case, and the court was authorized, for that reason, to decline the request made en bloc. Moreover, an inspection of the charge in its entirety discloses that the court did instruct the jury upon the law of insanity, substantially as requested. The remaining assignments of error are without merit.

2. The verdict is supported by evidence.

*Judgment affirmed. All the Justices concur.*

No. 4118. MARCH 11, 1924.

Murder. Before Judge Humphries. Fulton superior court. November 10, 1923.

J. B. Satterfield was convicted of the offense of murder. He filed a motion for new trial, which was subsequently amended. The motion was overruled, and the defendant excepted. The grounds of the amendment to the motion for new trial are as follows:

1. "Because during the progress of the trial the trial judge erred in this, that he did intimate or express an opinion to the jury. as to what had been proven or not proven, as follows: During the trial and after the direct evidence for the State had been closed and the defendant had made his statement and rested, the State placed a witness, Plennie Minor, on the stand to rebut the defense of insanity relied upon by the defendant; whereupon, in ruling on the question, the court used the following language in the presence and hearing of the jury: 'Plennie Minor, sworn in behalf of the State. Direct examination by Mr. Boykin: Q. When did you first see J. B. Satterfield? A. I seen him in the jail and Los Angeles, I don't remember the date. Q. How long was that before you started on your journey to return home? A. Three days. Q. During that interval did you talk to him? A. Yes sir, I talked to him. Q. About this case, or what? A. No sir, I didn't talk to him about this case, but I talked to him— Q. Did you talk to him about general things? A. Yes sir, I talked to him about what time I would be ready to leave there, and we carried him to the barber-shop and got him shaved the day before we left there. Q. Well, in your talk to him, judging from his actions, his conduct, his conversation, and his demeanor, state whether or not, in your opinion, he was rational, sane or insane.' Mr. Holloway: May it please your honor, he is undertaking to elicit testimony here about the condition of a man almost a couple of years afterwards. The court: Mr. Boykin, I don't believe that testimony is admissible; there is no general claim of insanity in this case, no evidence of a general claim of insanity; there has been no evidence offered by the defendant on that subject. Mr. Boykin: I don't think he has offered any directly, but I think his statement was made with a design, your honor, that he was overmastered, overpowered, when he stated to the jury that when he saw his daughter, it appeared that she was in a stock, and so forth. The court: I don't think this testimony is admissible.' The defendant respectfully contends that this was error, in that the language used by the court was tantamount to telling the jury that no insanity had been proved, or even evidence offered on that subject. Whereas, this defense was raised by the general issue by plea of not guilty, and was the main defense relied upon by the defendant; and the language used by the

court, this defendant respectfully contends, had the effect of shutting off his whole defense and rendering void his statement with reference to mental incapacity to form criminal intent, or that he was laboring under any mental delusion at the time of the act."

2. "Because the court refused to give in charge the following request to charge, the same having been submitted in writing before the jury had retired to consider their verdict, to wit: 'The defendant in this case, as one of his defenses, pleads that he was of unsound mind at the time of the commission of the offense alleged in the indictment, and that he was not criminally responsible for said deed. I charge you that a person shall be considered of sound mind who is neither an idiot, a lunatic, nor afflicted by insanity, or who has arrived at the age of fourteen years, or before that age if said person know the distinction between good and evil. The defendant claims, that although he committed the homicide, that he was not guilty of any crime, because, by reason of a delusion under which he was laboring at the time of the killing, he was unable to form in his mind an intent to commit a crime. I charge you on this subject that you must determine: was the defendant at the time of the commission of the alleged crime, as a matter of fact, afflicted with a disease of the mind so as to be insane? If such be the case, did he know right from wrong as applied to the particular act in question? If he did not have such knowledge, he is not legally responsible. If he did have such knowledge, he may nevertheless not be legally responsible if the two following conditions occurred: first, if by reason of the duress, or such mental disease, he had so far lost the power to choose between right and wrong and to avoid doing the act in question, as that free agency was at the time destroyed; second, and if at the same time the alleged crime was so connected with such mental disease in the relation of cause and effect as to have been the product of it solely. I charge you further that if you find that the defendant, without malice and not under such circumstances as would justify or excuse the killing, voluntarily killed the deceased, and that he was impelled so to do by a sudden, violent impulse of passion supposed to be irresistible, produced by some actual assault upon the defendant, or an attempt by the deceased to commit a serious personal injury upon the defendant, or by other equivalent circumstances sufficient to justify the

excitement of passion, then the homicide would, in law, be voluntary manslaughter. I charge you further that the code defines manslaughter to be the unlawful killing of a human creature, without malice, either express or implied, and without any mixture of deliberation whatever, which may be voluntary upon a sudden heat of passion. In all cases of voluntary manslaughter there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied. Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should have been an interval between the assault or provocation given and the homicide, of which the jury in all cases shall be the judges, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and be punished as murder. I charge you further that the 'other equivalent circumstances' as used in the section just read to you, defining voluntary manslaughter, must be such as are reasonably calculated to produce the same state of mind on the part of the defendant as would an assault or an attempt to commit a serious personal injury on him. Such equivalent circumstances are not necessarily such attendant facts as are in the nature of an actual assault or an attempt to commit serious injury upon the person of the slayer, but are such mitigating circumstances as are reasonably calculated to produce the same state of mind as would an actual assault upon him or an attempt to do him a serious bodily injury; and should you find that there was neither an actual assault upon him nor an attempt to do him serious bodily injury, yet if the circumstances attending and leading up to the homicide were such as to justify sudden and irresistible passion on his part, and such as to negative the idea that he acted deliberately and with malice, the jury would be authorized to find that the crime was not murder.' The defendant respectfully contends that the law of involuntary manslaughter should have been given to the jury, it having been injected into the case by reason of 'other equivalent cir-

cumstances.'"—Judge's note to this ground: "I do not think manslaughter is involved in this case. The defendant does not state that the deceased made any assault upon him or attempted to assault him. On the contrary he says: 'I don't know that he done it.' He then compares his sensations to those claimed with reference to the figures on the wall. Therefore the statement of the defendant does not make manslaughter, and no view of the evidence makes manslaughter; and the law of manslaughter should not be charged."

3. "Because the court erred in its order denying the written request to charge above referred to and above set out. It expressly omits 'other equivalent circumstances,' the very element of manslaughter involved in this case."

*Murphy M. Holloway, Warthen Evans,* and *W. S. Shelfer,* for plaintiff in error.

*George M. Napier,* attorney-general, *John A. Boykin,* solicitor-general, *T. R. Gress,* assistant attorney-general, *E. A. Stephens, R. H. Pharr,* contra.